1
2
3
4
5
6
7                          UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   ANTHONY D. RAY,                          Case No.   2:19-cv-01865-KJM-JDP (PC)

11               Plaintiff,                   FINDINGS AND RECOMMENDATIONS
                                              THAT DEFENDANTS' MOTION FOR
12         v.                                 SUMMARY JUDGMENT BE GRANTED

13   ONGEN PETRAS, et al.,                    ECF No. 59

14               Defendants.                  OBJECTIONS DUE WITHIN 14 DAYS

15

16

17         In early October 2017, plaintiff Anthony Ray, who was at the time a state prisoner at

18   California Medical Facility ("CMF"), began to experience severe head pains.  It took eight

19   months and more than fifteen requests for medical attention before he learned the cause of this

20   pain: a brain tumor known as a meningioma.  Plaintiff brings suit under 42 U.S.C. § 1983 against

21   three medical personnel at CMF—O. Petras, J. Bick, and W. McAllister—alleging that the

22   dilatory response to his medical requests and the denial of a brain scan for eight months amounted

23   to deliberate indifference to his serious medical needs in violation of his rights under the Eighth

24   Amendment.  ECF No. 1.  Defendants now seek summary judgment, ECF No. 59, arguing both

25   that plaintiff's suit cannot advance because he failed to exhaust his administrative remedies with

26   respect to defendants Bick and McAllister, and that they were not deliberately indifferent to

27   plaintiff's medical needs.

28

As an initial matter, I am sympathetic to plaintiff's ordeal, including the months-long pain that he suffered, the apparent difficulties that he faced obtaining medical care, and the challenges of litigating without counsel. In a November 2019 screening order, this court recognized that plaintiff's allegations potentially supported cognizable legal claims. ECF No. 6.

Nevertheless, plaintiff's suit suffers from two fatal deficiencies. First, plaintiff failed to exhaust his administrative remedies against defendants Bick and McAllister. Second, Petras's actions do not rise to the level of medical deliberate indifference. Petras was only responsible for plaintiff's medical care for approximately six weeks of the relevant period, during which time the record shows that plaintiff received competent medical care, including referrals to a pain center and to an optometrist. Plaintiff subsequently received treatment from medical personnel whom he has not named as defendants. Accordingly, I recommend that defendants' motion for summary judgment be granted.

**Background**

On three occasions in October 2017, following complaints of severe head pains, plaintiff was taken to the equivalent of an emergency room at California Medical Facility ("CMF"). ECF No. 59-4 at 5, 18-25. This was not the first time that plaintiff had sought help with pain. For years, he had endured pain in his head, neck, and spine, which defendant Petras—his primary care provider—had preliminarily diagnosed as chronic pain and cervical degenerative disease (cervicalgia). *See id*. at 2-4, 14-15. Petras had prescribed various treatments, including physical therapy, opioid pain medications, and epidural steroid injections, although in June 2017, after health care staff reported that plaintiff was diverting his morphine, Petras had tapered him off that drug and had shifted him onto a host of other medications, including acetaminophen, naproxen, gabapentin, and Elavil. *Id.* at 3-4, 15. Apparently considering this history, the doctors who treated plaintiff in October 2017 variously believed that his head pains were in some way attributable to his existing diagnoses of cervicalgia and chronic pain—or were migraines. *See id.* at 18-25.

On October 10, following his emergency treatments, plaintiff went to see Petras for a physical evaluation related to his head pains. *Id.* at 4. Petras found no "neurological

abnormalities that suggested a brain tumor," instead attributing plaintiff's symptoms to "possible glaucoma" and observing that plaintiff had been taking his gabapentin and Elavil irregularly, a practice that could cause or contribute to headaches.  *Id*.  Considering the absence of "focal neurological findings," Petras declined to order brain imaging, but he noted that if plaintiff's head pains persisted, it would be reasonable to perform a CT scan.  *Id*.  Petras referred plaintiff to an optometrist and to the Advanced Pain Medical Institute ("APMI"), where—the following day, October 11—plaintiff received a "nerve block" injection.  *Id*. at 4-5.

But plaintiff's head pains did not abate.  Beginning on November 15, 2017, and continuing through January 29, 2018, he submitted a series of increasingly desperate CDCR 7362 forms (health care services requests) asking to see his primary care provider.  *See* ECF No. 1 at 12-28.  A selection of plaintiff's fourteen health care services requests captures his frustration:

- "I have been in pain over a month.  I went off campus to have a procedure done by an outside physi[cian] and I have yet to be seen by my PCP.  I want to see my PCP."  *Id.* at 13 (request filed November 19, 2017).

- "Pain Extream [sic] for Over A Month 3RD 7362?"  *Id*. at 17 (request filed November 24, 2017).

- "I NEED TO SEE MY PCP due to EXTREAM [sic] Chronic Pain.  I have put in several 7362s without response."  *Id.* at 19 (request filed December 14, 2017).

- "I need to be seen by a doctor[.]  I have been experiencing strong levels of pain to several areas of my body.  Back, hip, shoulders, neck, wrist, knees.  I have been submitting 7362s for over two months and I have yet to be seen by any [doctor]."  *Id.* at 19 (request filed January 25, 2018).[1]

Plaintiff alleges that his requests were effectively ignored until January 31, 2018, when he was permitted a visit with defendant Petras.  *Id*. at 7-8.  Plaintiff also alleges that, at his January 31, 2018 doctor's visit, Petras dismissed his concerns and rejected his request for brain imaging,

---

[1] Although several forms filed by plaintiff in January 2018 list areas of acute pain, his December 31, 2017 form was the last one that explicitly referenced pain in his head.  *See* ECF No. 1 at 23-28.

1    citing the test's cost.  *Id*. at 8.

2              Defendants' account differs in several respects.  In his declaration, defendant Petras states

3    that on November 13, 2017, he was reassigned to oversee patients in a different dorm, at which

4    point another doctor, Victoria Ota, took over as plaintiff's primary care provider.  ECF No. 59-4

5    at 2, 7.  Petras attests that he neither provided medical care to plaintiff after November 13 nor saw

6    the medical requests filed by plaintiff between November 15 and January 31.  *Id*. at 7-8, 11-12.[2]

7    Plaintiff's own health care services requests corroborate this, as they appear to have been signed

8    only by Ota or by certain nurses.  *See* ECF No. 1 at 12-28.  Likewise, plaintiff's medical records

9    show that he had medical visits with Ota on December 5, 2017, January 31, 2018, and February

10   16, 2018.  *See* ECF No. 59-4 at 8, 36-43.[3]  These records contradict plaintiff's claims that his

11   requests were ignored throughout December and that he met with Petras in January; his records

12   show no other appointments between December 2017 and February 2018.  *Id*. at 14-41.  Petras

13   states that he intended to schedule a follow-up appointment with plaintiff in late October but

14   delayed doing so because plaintiff did not see the optometrist until November 3, and Petras was

15   unavailable immediately thereafter.  ECF No. 59-4 at 7.  Petras adds that, in preparation for his

16   November 13 reassignment, he communicated with Ota about plaintiff's ongoing care, though he

17   does not say whether he highlighted the possible need for a CT scan or other brain imaging.  *Id*. at

18   8, 11.

19             Plaintiff also alleges that two other medical personnel, defendants McAllister and Bick,

20   were deliberately indifferent to his serious medical needs.  ECF No. 1 at 8.  As for McAllister, a

21   physician at CMF, plaintiff alleges that he took over for Petras as plaintiff's primary care provider

22   at some point between November 2017 and January 2018.  *Id*.  McAllister attests that he was

23

24          [2] Petras was returned to his assignment as plaintiff's provider in March 2019, following
     the events relevant to this suit.  ECF No. 59-4 at 2.

25          [3] Although plaintiff does not name Ota as a defendant, notes from plaintiff's appointments
     with Ota appear relevant.  At the December 5 appointment, Ota decided against recommending
26   head imaging on the grounds that plaintiff's "sudden, sharp, 'deep and intense' . . . headaches
     [were] not getting any worse."  ECF No. 59-4 at 36.  At the January 31 appointment, Ota noted
27   that plaintiff's ongoing headaches were interfering with his ability to sleep and exercise; she
     prescribed morphine, but there is no indication whether head imaging was considered.  *Id*. at 40.
28

never plaintiff's primary care provider, ECF No. 59-5 at 1, and the record provides no evidence that he was.  According to McAllister, his involvement with plaintiff's medical care was limited to providing temporary coverage for Ota in screening health care services requests on two occasions in late January 2018.  *Id.* at 2-3.  On January 19, McAllister fielded a request from plaintiff for a prescription renewal and an appointment to see his primary care provider; McAllister says that he approved the renewal and scheduled plaintiff to meet with Ota.  *Id.* at 2.  On January 29, McAllister screened a second request from plaintiff regarding a missed APMI appointment and directed the nurse to follow up with Ota, who was scheduled to meet with plaintiff in two days.  *Id.*  McAllister claims that he never had an in-person medical encounter with plaintiff and that he played no other role in the treatment or diagnosis of plaintiff's brain tumor.  *Id.* at 3.

Plaintiff alleges that defendant Bick, CMF's Chief Medical Executive, knew of plaintiff's requests and of the inadequate treatment he was receiving.  ECF No. 1 at 8-9.  Defendant Bick attests that, during the relevant period, his only involvement in plaintiff's care was his approval, in February and June 2018, of two requests from Ota to provide plaintiff with specialty treatment.  ECF No. 59-7 at 4.  The record contains no other evidence of Bick's involvement.

On June 21, 2021, defendants moved for summary judgment, both for failure to exhaust and on the merits of plaintiff's Eighth Amendment medical deliberate indifference claim.  ECF No. 59.  On July 13, 2021, plaintiff filed an opposition, arguing that he had exhausted his administrative remedies; plaintiff did not address defendants' substantive arguments on medical deliberate indifference.  ECF No. 62.  After an extension, defendants replied on September 2, 2021.  ECF No. 65.  The matter is now ripe for review.

### Discussion

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  An issue of fact is genuine only if there is sufficient evidence for a reasonable factfinder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law."

1  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818

2  F.2d 1422, 1436 (9th Cir. 1987).

3          Each party's position must be supported by (1) citations to particular portions of materials

4  in the record, including but not limited to portions of depositions, documents, declarations, or

5  discovery; or (2) argument showing that the materials cited do not establish the presence or

6  absence of a genuine factual dispute or that the opposing party cannot produce admissible

7  evidence to support its position.  *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The

8  court may consider material in the record beyond that cited by the parties, but it is not required to

9  do so.  *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026,

10  1031 (9th Cir. 2001); *see also Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir.

11  2010).  Given the liberal standard afforded pro se litigants and the prohibition against granting

12  summary judgment by default, I will take the whole record into consideration in evaluating

13  whether defendants are entitled to summary judgement.[4]

14          "The moving party initially bears the burden of proving the absence of a genuine issue of

15  material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To meet its burden, "the

16  moving party must either produce evidence negating an essential element of the nonmoving

17  party's claim or defense or show that the nonmoving party does not have enough evidence of an

18  essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins.*

19  *Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  If the moving party meets this

20  initial burden, the burden shifts to the non-moving party "to designate specific facts

21  _____

22          [4] The advisory committee notes to the 2010 amendments to Rule 56(e) state that
"summary judgment cannot be granted by default even if there is a complete failure to respond to

23  the motion." Fed. R. Civ. P. 56(e) (advisory committee notes to 2010 amendments).  Instead,
courts are permitted to consider a fact undisputed if it is not properly addressed or to grant

24  summary judgment if the motion and supporting materials show that the movant is entitled to it.
*See id.*  This discretion is particularly apposite in cases with prisoner litigants proceeding pro se,

25  since an unrepresented prisoner's choice to proceed without counsel is often "less than
voluntary," and prisoners are subject to the "handicaps . . . [that] detention necessarily imposes

26  upon a litigant," such as "limited access to legal materials . . . [and] sources of proof."  *Jacobsen*

27  *v. Filler*, 790 F.2d 1362, 1364-65, n.4 (9th Cir. 1986); *see also Blaisdell v. Frappiea*, 729 F.3d
1237, 1241 (9th Cir. 2013) (holding that courts have an "obligation to give a liberal construction

28  to the filings of pro se litigants").

demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (citing *Celotex Corp.*, 477 U.S. at 323).  While the non-moving party is not required to establish a material issue of fact conclusively in its favor, it must at least produce "evidence from which a jury could reasonably render a verdict in [its] favor." *Id.* (citing *Anderson*, 477 U.S. at 252).  The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the non-moving party.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002).

## A. PLRA Exhaustion

Defendants Bick and McAllister argue that plaintiff did not exhaust his available administrative remedies before bringing his claims against them.  ECF No. 59-2 at 16-19.  Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). The PLRA recognizes no exception to the exhaustion requirement, with the significant qualifier that an inmate need only exhaust those remedies that are in fact "available."  *Ross v. Blake*, 578 U.S. 632, 648 (2016).

To satisfy the PLRA's exhaustion requirement, a plaintiff's administrative appeals must "provide enough information . . . to allow prison officials to take appropriate responsive measures." *Griffin v. Arpaio*, 557 F. 3d 1117, 1121 (9th Cir. 2009).  The California prison system's grievance regulations define how detailed a grievance must be to satisfy the PLRA's exhaustion requirement.  *Id.* at 218.  The regulations require prisoners to "describe the specific issue under appeal and the relief requested . . . [,] list all staff member(s) involved . . . [,] describe their involvement in the issue . . . [, and] state all facts known and available to him."  Cal. Code Regs. tit. 15 § 3084.2(a) (repealed).  If the court concludes that a plaintiff failed to exhaust available remedies, the proper remedy is dismissal without prejudice of the portions of the complaint barred by § 1997e(a).  *See Jones v. Bock*, 549 U.S. 199, 223-24 (2007); *Lira v. Herrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

1    I find that plaintiff did not exhaust his administrative remedies against defendants Bick

2    and McAllister.  Plaintiff filed no administrative grievances identifying or describing defendant

3    McAllister's behavior.  *See* ECF Nos. 59-2 at 18; 59-6 (detailing plaintiff's grievance history).

4    And, although plaintiff did identify defendant Bick in three grievances, the issues raised in those

5    grievances did not relate to the allegations in this case.  *See id.* at 18-19.  Of these, the closest in

6    time—CMF HC 18001747/18000130—addressed allegations that defendant Bick retaliated

7    against plaintiff in July 2018 by threatening to take away his walker or other mobility device.  *See*

8    ECF No. 59-6 at 3-5, 8-12, 28-30.  The other two grievances—CMF HC 19000115 and CMF HC

9    19000389—were filed in 2019 and involved additional claims of retaliation and of problems with

10   disability accommodations.  *See id*. at 3-5, 8-12.  These grievances did not relate to plaintiff's

11   claims of delayed treatment and diagnostic tests between November 2017 and June 2018.

12       Plaintiff did exhaust two grievances—CMF HC 18001705 and CMF HC 18000881—that

13   were relevant to the issues in the case, but these did not identify either McAllister or Bick.  *See*

14   ECF No. 59-6 at 10-12; ECF No. 1 at 37-41.  Notwithstanding the language of the governing

15   regulations, failing to identify all staff members or to describe their involvement fully does not

16   always compel a finding of non-exhaustion.  *See Reyes v. Smith*, 810 F.3d 654, 658 (9th Cir.

17   2016).  But a grievance that fails to identify a defendant later named in a suit will only be held to

18   have exhausted a prisoner's administrative remedies under the PLRA when two conditions are

19   met: (1) "prison officials ignore[d] the problem and render[ed] a decision on the merits of the

20   grievance," *id.*, and (2) there is some obvious connection between the issues in the grievance and

21   the involvement of the defendant, *see id*. at 659 (holding that plaintiff exhausted his remedies

22   against unidentified members of the Pain Management Committee because his exhausted

23   grievance included allegations that the whole committee wrongly denied him pain medication).

24   Here, although the prison rendered decisions on the merits for both grievances, *see* ECF No. 59-6

25   at 59-60, 80-81, plaintiff has not shown a connection between defendants Bick or McAllister and

26   the issues described in the grievances.

27       In CMF HC 18001705, filed in June 2018, plaintiff complained that defendant Petras—

28   not Bick or McAllister—failed to order an MRI to investigate the source of his headaches.  *Id.* at

82.  Defendant McAllister claims that he was never plaintiff's primary care provider and that he did not play a role in any medical decisions concerning the diagnosis or treatment of plaintiff's brain tumor.  *See* ECF No. 59-5 at 1.  This account is corroborated by plaintiff's medical records, in which McAllister's name does not appear, *see* ECF No. 59-4 at 14-55; plaintiff provides no evidence of McAllister's involvement.  Defendant Bick was only marginally more involved. Bick claims that his involvement was limited to approving one referral from Ota for plaintiff to undergo a diagnostic "cervical medial branch block" in February 2018 and a second referral to remove plaintiff's tumor in June 2018.  ECF No. 59-7 at 4.  He states that he played no role in determining whether plaintiff should receive a brain scan or an MRI, *see id.*, and plaintiff provides no contrary evidence.  Accordingly, defendants Bick and McAllister were not sufficiently connected with the subject of CMF HC 18001705—the failure to use brain imaging to diagnose his tumor—for that grievance to satisfy the PLRA's exhaustion requirement against them.  *See Griffin*, 557 F. 3d at 1118-21 (holding that plaintiff's grievance requesting a ladder to access his top bunk did not exhaust his remedies with respect to a prison official's subsequent disregard of an order assigning him to a lower bunk).

In CMF HC 18000881, filed on January 17, 2018, plaintiff complained that he had submitted eleven unanswered health service requests for his extreme head pain between November 15, 2017 and January 9, 2018.  ECF No. 59-6 at 61.  Defendant Bick states that he did not receive any of plaintiff's health care requests between November 2017 and January 2018, ECF No. 59-7 at 4; indeed, his signature does not appear on any requests, ECF No. 1 at 12-28. Although McAllister did respond to two of plaintiff's health care services requests in late January 2018, these requests were submitted after plaintiff filed CMF HC 18000881 on January 17.  ECF 59-5 at 2.  Plaintiff has pointed to no other evidence that either Bick or McAllister knew of his service requests.  This level of involvement is similarly inadequate to satisfy the exhaustion requirement.

Finally, plaintiff argues in the alternative that his failure to exhaust administrative remedies should be excused on the grounds that prison staff blocked or interfered with his grievance filings.  ECF No. 62 at 2-3.  In some cases, a prison official's improper failure to

1  process a prisoner's grievance renders that remedy unavailable, excusing the lack of exhaustion.

2  *See, e.g.*, *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017).  But when defendants meet

3  their burden of showing that plaintiff did not exhaust his remedies, the burden shifts to plaintiff to

4  adduce evidence showing that his remedies were effectively unavailable.  *See Albino v. Baca*, 747

5  F.3d 1162, 1172 (9th Cir. 2014).

6       Plaintiff has not met this burden.  He claims that officials improperly blocked or refused

7  to address several of his appeals at the second or third level—including, as relevant here, CMF

8  HC 18000881.  *See* ECF No. 62 at 23-26.  But CMF HC 18000881 did receive a decision at the

9  headquarters level, ECF No. 59-6 at 59; indeed, defendants appear to concede that this appeal—

10  along with CMF HC 18001705—sufficed to exhaust plaintiff's administrative remedies against

11  defendant Petras, *id.* at 5.  The remaining grievances identified by plaintiff as improperly blocked

12  are irrelevant.  *See* ECF Nos. 62 at 23, 59-6 at 8-12 (showing that the grievances identified by

13  plaintiff were filed well after the events in this case, or otherwise addressed unrelated issues).

14  Because plaintiff has not shown that defendants blocked any grievances addressing the

15  involvement of defendants Bick or McAllister with the issues in this case, he has not created a

16  genuine dispute of fact as to whether the grievance system was unavailable to him.  *See Jeffries v.*

17  *Fields*, No. CV 12-1351 R (JC), 2014 WL 994908, at *18 (C.D. Cal. Mar. 10, 2014) (holding

18  plaintiff's conclusory assertion that officials tampered with his grievance "insufficient to

19  demonstrate that . . . prison officials . . . rendered further administrative remedies unavailable").

20  Accordingly, I recommend granting defendant Bick and McAllister's motion for summary

21  judgment for failure to exhaust and dismissing plaintiff's claims against them.  I turn now to the

22  remaining claim against defendant Petras.[5]

23  **B.  Eighth Amendment Deliberate Indifference to Medical Needs**

24       "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

25  _____

26  [5] Because I find that plaintiff failed to exhaust available administrative remedies with
   respect to his claims against Bick and McAllister, I need not address Bick or McAllister's

27  remaining merits arguments.  *See Lira*, 427 F.3d at 1175-76 (holding that where a plaintiff failed
   to exhaust some but not all claims, the proper procedure is to dismiss those portions of the

28  complaint that were not exhausted).

1  must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091,

2  1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The two-prong test

3  for deliberate indifference requires a plaintiff to show (1) "'a serious medical need' by

4  demonstrating that 'failure to treat a prisoner's condition could result in further significant injury

5  or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the

6  need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d

7  1050, 1059 (9th Cir. 1992)).  "This second prong—defendant's response to the need was

8  deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a

9  prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing

10  *McGuckin*, 974 F.2d at 1060).  Indifference may be manifest "when prison officials deny, delay

11  or intentionally interfere with medical treatment, or it may be shown by the way in which prison

12  physicians provide medical care." *Id.*  When a prisoner alleges a delay in receiving medical

13  treatment, the delay must have led to further harm for the prisoner to make a claim of deliberate

14  indifference to serious medical needs.  *See McGuckin*, 974 F.2d at 1060 (citing *Shapely v. Nevada*

15  *Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

16  "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060

17  (9th Cir. 2004).  "Under this standard, the prison official must not only 'be aware of the facts

18  from which the inference could be drawn that a substantial risk of serious harm exists,' but that

19  person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer v. Brennan*, 511 U.S. 825,

20  837 (1994)).  "If a prison official should have been aware of the risk, but was not, then the official

21  has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson v.*

22  *Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)).  "A showing of medical malpractice or

23  negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment."

24  *Id.* at 1060.  "[E]ven gross negligence is insufficient to establish a constitutional violation." *Id.*

25  (citing *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990)).  Additionally, a difference of

26  opinion between an inmate and prison medical personnel about a medical diagnosis or course of

27  treatment is insufficient to support a deliberate indifference claim.  *See Toguchi*, 391 F.3d at

28  1058; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

As an initial matter, I find that a reasonable juror could conclude that plaintiff's meningioma brain tumor, which caused him extreme, persistent, and debilitating pain for eight months, constituted an objectively "serious medical need." *See McGuckin*, 974 F.2d at 1059 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."); *Gress v. Smith*, No. 2:13-CV-0328-TLN-KJN-P, 2018 WL 6421254, at *6 (E.D. Cal. Dec. 6, 2018) (holding that a meningioma brain tumor constituted a serious medical need), report and recommendation adopted, 2019 WL 932030, at *1 (E.D. Cal. Feb. 26, 2019).

Nevertheless, plaintiff has not met his burden of showing that defendant Petras "[knew] of and disregard[ed] an excessive risk to inmate health." *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc). Plaintiff's allegations contain two potential instances of deliberate indifference: first, the allegedly dilatory response to his many desperate health care service requests between November 15, 2017, and January 31, 2018; and second, the failure by defendant Petras to order an MRI to diagnose his brain tumor. *See* ECF No. 1.

In response, defendant Petras first argues that, due to his reassignment on November 13, 2017, he had no knowledge of plaintiff's health care service requests after that date. *See* ECF No. 59-4 at 2, 7-12. Corroborating this claim, the signatures on plaintiff's requests belong to various nurses or to Victoria Ota, who is also listed as the physician on plaintiff's health records between November 2017 and June 2018. *Id.* at 36-52. Plaintiff has submitted no evidence, beyond his own conclusory allegations, that Petras was aware of these requests; this showing is insufficient to defeat a properly supported motion for summary judgment. *See Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact.").

As for the failure to use an MRI scan—or any type of brain imaging—it is true that a significant delay in diagnosing or treating a serious health condition can support an inference of

1  deliberate indifference. *See Jett*, 439 F.3d at 1097-98. But here, plaintiff's argument is limited

2  by defendant Petras's reassignment on November 13; Ota, rather than defendant Petras, was

3  responsible for plaintiff's care for most of the eight-month period. *See* ECF No. 59-4 at 2, 7. My

4  analysis is therefore limited to the approximately six-week period between the onset of plaintiff's

5  headaches and Petras's reassignment.

6          Petras submits that at the October 10 appointment he conducted an evaluation and

7  determined that plaintiff's head pains were likely attributable to some combination of glaucoma

8  and plaintiff's inconsistent use of pain medication. *Id.* at 6-7. Petras found "no neurological

9  abnormalities indicating a tumor" and noted that a CT scan would be appropriate if plaintiff's

10  head pains persisted. *Id.* He provided treatment consistent with his diagnosis, referring plaintiff

11  to an optometrist and to the APMI for continued treatment of his chronic pain. *Id.* The record

12  indicates that Petras was attempting to diagnose and treat plaintiff's symptoms, and plaintiff has

13  offered no evidence suggesting otherwise. Even if plaintiff had adduced medical evidence that

14  Petras "should have had a higher degree of suspicion of a possible brain tumor," *Gress*, 2018 WL

15  6421254, at *29, that would still not meet plaintiff's high burden of showing that Petras acted "in

16  conscious disregard of an excessive risk to [his] health," *id.* (granting summary judgment to

17  defendants where plaintiff failed to adduce evidence of defendants' subjective disregard, even

18  over expert testimony showing that defendants' four-year delay in diagnosing plaintiff's brain

19  tumor may have been negligent).

20          I therefore find that no reasonable juror could find that defendant Petras acted with

21  deliberate indifference, and I recommend that his motion for summary judgment be granted.[6]

22

23

24

25

26

27

28

---

[6] Because I find that plaintiff has not shown that defendant Petras violated his Eighth
Amendment rights, I need not address defendants' qualified immunity defense.

13

Accordingly, it is hereby recommended that:

1. Defendants' motion for summary judgment, ECF No. 59, be granted;

2. plaintiff's claims against defendants Bick and McAllister be dismissed;

3. judgment be entered in favor of defendant Petras and against plaintiff; and

4. the Clerk of Court be directed to close the case.

I submit these findings and recommendations to the district judge under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days of the service of the findings and recommendations, any party may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated:   February 1, 2022

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

14